## Steak and Ale Restaurants of America v. Commonwealth

*Ralph D. Tive*, for appellant.
*Eugene Dice*, contra.

WATERS, *Member*, September 17, 1974 — This matter comes before the board as an appeal from the denial of a permit to appellant for connection of a commercial establishment, a Steak and Ale Restaurant, to the south plant of the East Pennsboro Township Authority. The sewage treatment plant in question was the subject of a

previous order of the board which found an hydraulic overload at the plant and limited future connections to three new residential dwellings per month, unless the parties agreed to some other equivalent distribution of the three permits on a case by case basis, until the plant capacity problem, which was being addressed, was completely solved.

Appellant presented testimony at the hearing to support an appeal based on a belief that, if the sewage was released from its business establishment at night, then the plant design limit of 1.12 million gallons per day would not be adversely affected.

A motion to dismiss the appeal was made, but was denied when appellant raised another issue concerning the lack of due process by permitting some connections and prohibiting others. It is argued that there must be an "all or none" rule applied, and any other solution is constitutionally inappropriate.

## FINDINGS OF FACT

1. Appellant, Steak and Ale Restaurants of America, Inc., applied for a sewage permit for connection to the south plant of the East Pennsboro Township Authority, which is presently under a partial sewer ban.

2. The partial sewer ban presently in effect at the plant was imposed by order of this board as a modification of a complete ban which had previously been imposed by the Department of Environmental Resources in response to an overload of the plant capacity.

3. The south treatment plant of East Pennsboro Township has a capacity of 1.12 million gallons per day, but has been and is receiving flows in excess of that amount.

4. The board, in modifying the complete sewer ban to a limited ban, found no organic overload, and found that the authority was making substantial efforts to solve the hydraulic overload.

5. Considering all of the circumstances of that case, a complete sewer ban was not deemed to be reasonable by the board.

6. Appellant had informal meetings with the department to obtain the permit it seeks, but these meetings were not fruitful, and appellant now feels that due consideration was never really given to its application.

7. Appellant has devised a system whereby all of the discharge from its establishment into the sewage system would be made by a time release at night when the south plant receives a low flow.

## CONCLUSIONS OF LAW

1. The board has jurisdiction over the parties and the subject matter.

2. The introduction of sewage into a public system going to a treatment plant which is already hydraulically overloaded cannot be allowed on the basis that it will be released at a time of lowest flow to the plant during the 24-hour period.

3. The board may properly modify a sewer ban by allowing a limited number of new connections where there is no substantial organic overload, and where limited connections present no public health hazard.

4. The board must permit the department to carry out its discretionary administrative function in determining which connections pose the least threat to an hydraulically overloaded treatment plant so long as the decisions are not arbitrary or unreasonable.

5. The Clean Streams Act authorizes the department to prohibit any additional sewer connections to a municipal system, and this authority includes the power to limit the number of such connections under proper circumstances.

6. The order of the board issued in the matter of East Pennsboro Township Docket no. 73-287-W permitting three residential dwellings per month and only such other connections as were agreed upon between the department, township, and township sewer authority, is not so vague as to violate the due process clause of the State or Federal Constitution.

7. Equal protection of the law guarantees only that all persons, within a particular classification, shall be treated equally before the law, provided that the classes themselves have some reasonable and proper basis for distinction.

## DISCUSSION

Appellant desires to establish a restaurant in East Pennsboro Township and to discharge sewage to a hydraulically overloaded treatment plant.

It is clear to us that, if this is to be permitted, it will not be on the basis of any theory that turns on the time of day (or night) that is selected for the discharge of sewage into the public system. It would seem to be beyond question that, if a treatment plant has a capacity of 1.12 million gallons per day, that same system does not gain additional capacity at night. The hearing in this proceeding was largely given over to the above proposition, and we would have granted the motion to dismiss the case if this were the sole issue raised by this ap-

peal.[1] It is the department's position that appellant may not now attack the order issued by the board in March 1974, and appealed only by the township. We disagree. Appellant had neither reason nor standing to appeal the order until the application for a permit was denied.[2]

Appellant raises three issues—two constitutional and one statutory—which now deserve our attention. First, it is argued that under the Clean Streams Act the board is without authority to limit the total number of connections to a public sewage system. It is argued that the law allows all applications to hook up or, where there is danger to public health, no applicant may hook up.[3] What the department or this board may not do, appellant urges,

1. Appellant raised a question about the limited consideration which was given to its proposal, and suggested that there was some new information that was never considered at all by the department. The board indicated that it would remand the case to the department without a hearing if that was to be an issue before the board. Appellant then waived any consideration of the "appealable order" issue.

2. In the face of arguments that appellant cannot challenge the validity of the order at this time, it seems to us that this is clearly the time to do so. The sewer connection ban order, as modified by the board has some characteristics of a regulation—it applies generally to all future applicants for building permits in East Pennsboro Township. The only time appellant can attack our earlier decision is after that decision comes to be applied to it. The department, which had the discretion to grant an exception despite the "three dwellings" limitation, chose not to. The fact that the board had this discretion does not, we think, obviate the issue of the validity of the rule itself as applied to appellant.

3. The Clean Streams Act of June 22, 1937, P.L. 1987, as amended, 35 PS §§691.203(a), et seq., authorizes the department to issue an order to a municipality when necessary to properly provide for the prevention—of a public health nuisance.

is impose a monthly quota on connections. At first blush this appears to be a weighty and cogent argument. If this argument were applied to a case where an organic overload were the sole issue, we would agree emphatically. This, however, is not the case. Here we are dealing with a limited ban imposed because of a much more speculative, and difficult to prove, danger to public health, which comes from exceeding the plant capacity due to infiltration of water, usually from a source having nothing to do with sewage, i.e., rainwater and surface water. It is for this reason that we believe a limited sewer connection order was proper in the first instance. The Clean Streams Act states that the department orders:

". . . may prohibit sewer systems extensions, additional connections, or any other action that would result in an increase in the sewage that would be discharged into an existing sewer system or treatment facility.": 35 PS §691.203.

We believe this language was intended by the legislature to have a liberal construction.[4] It is axiomatic that the greater includes the lesser. Where the department is authorized to prohibit all connections beyond a given number, this is deemed to be the maximum that will permit the plant to operate without posing a threat to public health. It is admittedly difficult if not impossible to determine the exact number, any excess of which would create a danger to health. There is no "magic" number. We strove only for some reasonable limitation on additional connections, until such time as corrective measures could bring the plant infiltration prob-

---

4. Statutory Construction Act of May 28, 1937, P.L. 1019, sec. 58, 46 PS §558.

lem under control. True, it is an administrative function to reach the indicated determination. It is our view, however, that the board may properly enter any final order in an appeal which could have and, indeed, should have been issued by the department if there is substantial evidence offered to support such order.

In any event, we fail to see how this first argument advanced by appellant can possibly aid his cause. If, as has been suggested, the department has only two alternatives (either to allow all connections, or ban all of them), then nothing could be more clear than that the department would elect to allow no connections—including appellants'.

Moving to the first constitutional argument, appellant alleges a violation of his right under the Federal and State Constitutions to due process. Specifically, he believes the board order, which limited East Pennsboro Township to three dwelling connections per month unless otherwise agreed between the department and the township, is too vague to be enforceable.

Due process of law is, after all, simply a constitutional test of fairness under all of the particular circumstances. In Hannah et al. v. Larche et al., 363 U.S. 420 (1960), the U.S. Supreme Court said:

"'Due process' is an elusive concept. Its exact boundaries are undefinable, and its content varies according to specific factual contexts. Thus, when governmental agencies adjudicate or make binding determinations which directly affect the legal rights of individuals, it is imperative that those agencies use the procedures which have traditionally been associated with the judicial process. On the other hand, when governmental action does not partake of an adjudication, as for example, when a

general fact-finding investigation is being conducted, it is not necessary that the full panoply of judicial procedures be used. Therefore, as a generalization, it can be said that due process embodies the differing rules of fair play, which through the years, have become associated with differing types of proceedings. Whether the Constitution requires that a particular right obtain in a specific proceeding depends upon a complexity of factors. The nature of the alleged right involved, the nature of the proceeding, and the possible burden on that proceeding are all considerations which must be taken into account."

As frequently occurs in the area of administrative law, a case by case factual determination must be made before particular regulations or prohibitions are applied. Indeed this is one of the chief distinctions between judicial and administrative justice. Such delegations of authority to administrative agencies are necessarily more vague than other statutory provisions such as our criminal laws. We, therefore, believe that cases cited under our criminal laws are not here applicable to the due process question in this context. There is, of course, nothing vague about a requirement that three dwellings each month be allowed to connect to the township's public sewage facility. With regard to the department's being given the administrative discretion to determine which connections beyond that number are to be allowed, we believe the previous discussion is explanatory. In our view, the legislature delegated this power to the department. The board has simply recognized it. If this constitutional question arose in a context other than in administrative law, perhaps our decision would be different.

The final question is a related, though different one, and is based on the equal protection clause of our U.S. Constitution. Inasmuch as the department can determine who can and cannot hook up to the township's system and has refused appellant's application, appellant argues that commercial establishments, such as his, are not being treated equally with residential dwellings. The short answer is, of course, that commercial establishments have never been treated, in law, the same as residential dwellings. The Constitution requires only that all *classes* of structures be treated the same as any others within that class.

We do believe, however, with appellant, that if any commercial establishments are permitted by agreement of the township and the department, then all must be given an equal chance to obtain a permit. This may simply mean that all such applicants be considered on a first-come-first-served basis if there are no other distinguishing factors, and the three allowed dwelling connections are either not used or are exceeded by agreement of the parties.

It is the department which is best suited, by its professional and technical staff, to determine which connections will offer the least likelihood of a threat to public health.[5] This board does not have the desire, authority or expertise, to run the department. Where a proposed departmental action is arbitrary or unreasonable, this board is simply empowered to say so.

---

5. It was our view that the parties may decide in a particular month to allow a connection other than residential in lieu of such three residential connections where reasons dictated.

In conclusion, appellant has offered no evidence to show a violation of his rights to equal protection of the law. It is therefore necessary for us to dismiss the appeal. We do this, however, with the caveat that the department or the township have the authority to permit any commercial establishments to connect to the municipal sewage system, and, if and when this is allowed, appellant must be considered along with other such applicants on some fair and reasonable basis.

## ORDER

And now, September 17, 1974, the appeal of Steak and Ale Restaurants of America is hereby dismissed without prejudice.

## CONCURRING OPINION

COHEN, *Member*, September 17, 1974—While I concur generally in this adjudication, I cannot concur in the reasons set forth therefor in the adjudication insofar as they relate to rulings on the constitutionality of the previous order of the board in Commonwealth v. East Pennsboro Township, EHB Docket no. 73-287-W (issued March 8, 1974). It is clear that appellant is seeking to question the validity of a past adjudication of this board by means of a collateral attack thereon. I have difficulty in agreeing that an inquiry into the propriety of our former adjudication is warranted in this situation. But, even if appellant's "cause of action" did not arise until after the appeal period for appeals from board orders had expired, it is clear that the previous ad-

judication of the board in Commonwealth v. East Pennsboro Township, supra, did not adversely affect the interests of appellant. Whatever aggrievement appellant suffered was from the action of the department, not from that of this board. The adjudication of this board in the East Pennsboro matter, supra, did not in any way preclude the department from permitting appellant to tap into the sewer system. As a matter of fact, the order of the board in that matter specifically permitted other connections to the system under conditions which allowed the department to exercise its discretion. That being the case, it is difficult for me to understand how the previous action of this board adversely affected appellant's rights.

For the reasons set forth above, I am of the opinion that appellant lacks standing to contest the constitutionality of our prior order in Commonwealth v. East Pennsboro, supra. Had our previous order not contained a provision allowing additional connections with the agreement of the department, the township and the township sewer authority, perhaps appellants could have properly raised a question concerning the propriety of our previous order. However, since the order did contain such a provision, there was no reason to rule on the constitutional issues with regard to our previous adjudication other than by denying appellant's standing to raise them.

Insofar as the action of the department from which this appeal is taken is concerned, it is perfectly proper for appellant to raise issues of constitutionality relative to that action; however, I do not believe he can raise the issue with regard to the board's previous order.